UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

IN RE:


AREA PLUMBING SUPPLY, INC.

Case # 1-14-44283- cec
**AFFIDAVIT**

                                    Plaintiff,

-----------------------------------------------------------------x

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF QUEENS  )


_____Shlimtzic Blum_____, being duly sworn, deposes and says:

1.    I am the _Secretery_ of Park Ave. RE LLC.

2.    In my capacity as _Secretery_, I have access to Park Ave. RE LLC's business records, including the business records for and relating to the loans of AREA PLUMBING SUPPLY, INC. I make this affidavit based upon my review of those records relating to the loans of AREA PLUMBING SUPPLY, INC., and from my own personal knowledge of how they are kept and maintained. The loan records for the Borrower are maintained by Park Ave. RE LLC in the course of its regularly conducted business activities.

3.    According to the business records, AREA PLUMBING SUPPLY, INC. executed and delivered four (4) Notes dated November 8, 2004, to New Century Mortgage Corporation, for the sum of $287,000.00 on Loan #1, $275,000.00 on Loan #2, $261,000.00 on Loan #3, and $347,000.00 on Loan #4, each with interest on the unpaid balance thereof to be computed at 7.37500 percent per annum or such other rate as provided for in said Notes.

4.    The Notes provided for repayment in monthly installments commencing on January 1, 2005, and continuing thereafter on the same date of each subsequent month until the notes are paid, along with pro-rated monthly escrow payments. Final payment, if not sooner paid, is due on December 1, 2034. Annexed hereto as Exhibit "A" is a copy of the original notes.

5.    As security for payment of this debt, AREA PLUMBING SUPPLY, INC. also executed and delivered to New Century Mortgage Corporation four (4) mortgages dated November 8, 2004. Said mortgage were recorded in the QUEENS County Register's Office. The mortgages are secured by the premises known as 109-22, 109-24, 109-26, and 109-28 101st AVENUE,

OZONE PARK, NY 11419. Annexed hereto as Exhibit "B" is a copy of the recorded mortgages.

6. Thereafter, the original notes were delivered to Park Ave. RE LLC on December 21, 2010, and Park Ave. RE LLC has maintained possession of the notes since that date. See Assignment Documents, Exhibit "C."

7. Therefore, when the subject motion for relief from the automatic stay was commenced on October 31, 2014, the Movant was the holder of the notes and mortgages and was the proper party to maintain this action.

_Shlontzie Blum_

Signature

Print Name: Shlontzie Blum

Title: Secretery

Sworn to before me on this

25th day of Nokember, 2014

_Mona Ky_

Notary Public

MONICA ROTHSTEIN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01RO6055865
Qualified in Kings County
Commission Expires Feb. 25, 2015

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE:

Area Plumbing Supply Inc.,

                    Debtor

Hearing Date: December 17, 2014
Hearing Time: 2:45 PM
CASE NO.: 1-14-44283-cec
Chapter: 11
CHIEF JUDGE: CARLA E. CRAIG

## SUPPLEMENTAL AFFIRMATION IN FURTHER SUPPORT OF AN ORDER MODIFYING AND TERMINATING THE AUTOMATIC STAY

TO:   **THE HONORABLE CARLA E. CRAIG,**
      **UNITED STATES BANKRUPTCY CHIEF JUDGE:**

The Application of Park Ave RE LLC ("Movant"), by its attorneys, Rosicki, Rosicki & Associates, P.C., respectfully represents and says:

Eric S. Sheidlower, Esq., an attorney at law duly admitted to practice before this Court and the Courts of the State of New York, hereby affirms the following to be true under penalty of perjury:

1. This supplemental affirmation is submitted in further support of Movant's application for relief from the automatic stay with regard to properties located at 109-22 101st Avenue, Ozone Park, NY 11419, 109-24 101st Avenue, Ozone Park, NY 11419, and 109-26 101st Avenue, Ozone Park, NY 11419.

2. As previously stated, Movant is the holder of the following Notes and Mortgages:

a) Note and Mortgage dated November 8, 2004, given by Area Plumbing Supply, Inc., (the "Debtor") in the original principal amount of $287,000.00 pledging the real property known as 109-22 101st Avenue, Ozone Park, NY 11419 as security (herein referred to as "Loan 1").

b) Note and Mortgage dated November 8, 2004, given by Area Plumbing Supply, Inc., (the "Debtor") in the original principal amount of $275,000.00 pledging the real property known as 109-24 101st Avenue, Ozone Park, NY 11419 as security (herein referred to as "Loan 2").

c) Note and Mortgage dated November 8, 2004, given by Area Plumbing Supply, Inc., (the "Debtor") in the original principal amount of $261,000.00 pledging the real property known as 109-26 101st Avenue, Ozone Park, NY 11419 as security (herein referred to as "Loan 3").

d) Note and Mortgage dated November 8, 2004, given by Area Plumbing Supply, Inc., (the "Debtor") in the original principal amount of $347,000.00 pledging the real property known as 109-28 101st Avenue, Ozone Park, NY 11419 as security (herein referred to as "Loan 4").

3. The Court has requested additional information clarifying the standing of Park Ave RE, LLC. to bring the subject motion for relief.

4. Annexed hereto is the sworn affidavit of Shlomtzie Blum, secretary for the Movant, dated November 25, 2014, attesting to the fact that the Movant maintains physical possession of the original Notes, copies of which are annexed to said affidavit.

5. On or about December 21, 2010, Wells Fargo Bank, N.A., as Trustee for the registered holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2005-1 (hereinafter, "Wells Fargo"), assigned its interest Notes, Mortgages, Loan Documents, and Cause of Action to Park Ave RE LLC.

6. At the time of the transfer, Wells Fargo executed a number of documents evidencing the assignment. These documents are annexed to the affidavit of Shlomtzie Blum as

Exhibit "C". These documents include the following:

       A.   Assignment of Cause of Action

       B.   Allonge- Loan #1 ($287,000)*

       C.   Allonge- Loan #2 ($275,000)

       D.   Allonge- Loan #3 ($261,000)

       E.   Allonge- Loan #4 ($347,000)

       F.   Assignment of Loan Documents

       G.  Assignment of Mortgage- Loan 1

       H.  Assignment of Mortgage- Loan 2

       I.   Assignment of Mortgage- Loan 3

       J.  Assignment of Mortgage- Loan 4

7. Based upon the foregoing documentation, this Court is able to determine that Movant has been a secured creditor of this Debtor since December 21, 2010.

8. As was previously pointed out to the Court, Justice Marguerite A. Grays, Justice of the New York Supreme Court, County of Queens, signed a Judgment of Foreclosure and Sale in the case of *Wells Fargo Bank N.A., as Trustee for the registered holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2005-01 v. Area Plumbing Supply, Inc.,* et al., (Index # 30107/08) on March 23, 2012, which Judgment was recorded by the Queens County Clerk on April 2, 2012.

9. This Court took notice of the fact that the assignment of the cause of action was made in 2010 and the Judgment, ostensibly into Wells Fargo, was signed in 2012.

---

\* being located at the present; however, we have annexed an assignment of mortgage for loan #1

10. The Movant was not legally obligated to amend the caption of the foreclosure action out of Wells Fargo. CPLR §1018 states that "Upon any transfer of interest the action may be continued by or against the original parties unless the court directs the person to whom the interest is transferred to be substituted or joined in the action". No such direction was made by the court in this case. That being the case, the plaintiff remained as Wells Fargo.

11. Case law further supports this practice. In a case where neither party in a foreclosure proceeding requested, and the trial court did not direct that the alleged assignee of a mortgage be substituted as plaintiff in the foreclosure action, the action could be continued by the mortgagee. CitiMortgage v. Rosenthal, 88 A.D.3d 759, 931 N.Y.S.2d 638 (2nd Dept. 2011).

12. It has further been held that a mortgage foreclosure action did not have to be dismissed following an assignment of mortgage and assignee's failure to be formally substituted as party plaintiff on the ground that the named plaintiff no longer had any rights in the matter. Rather, it was held that the assignee could continue the foreclosure action in the name of the original mortgagee, even absent a formal substitution. Central Federal Sav., F.S.B. v. 405 W. 45th St., Inc., 242 A.D.2d 512, 662 N.Y.S.2d 489 (1st Dept. 1997).

13. Therefore, the Judgment of Foreclosure and Sale should be considered valid and stands as res judicata. Money Store of New York, Inc. v. Doner Holding Corp., 112 A.D.2d 284 at 287, 491 N.Y.S.2d 730 at 732 (2nd Dept. 1985). Once a claim is brought to a final conclusion, all other claims are barred, even if based upon different legal theories or if seeking a different remedy. See Silverman v. Leucadia, Inc., 156 A.D.2d 442 at 443, 548 N.Y.S.2d 720 at 721 (2nd Dept. 1989).

14. Finally, it should be pointed out that the Debtor defaulted in the state court foreclosure action and is therefore deemed to have waived any challenge to standing. HSBC Bank

v. Dammond, 59 A.D.3d 679, 875 N.Y.S.2d 490 (2nd Dept. 2009).

   15. While it is understood that the present clarification of standing is based upon the Court's request and not the Debtor's, the Debtor's waiver remains intact.

   WHEREFORE, it is respectfully requested that Movant's application for relief from the automatic stay be granted in its entirety, together with such other and further relief as this Court deems just, proper, and equitable.


Dated: November 26, 2014
       Plainview, NY



                              Respectfully submitted,



                              ROSICKI, ROSICKI & ASSOCIATES, P.C.
                              By: Eric S. Sheidlower, Esq.
                              Attorneys for Movant
                              Main Office 51 E Bethpage Road
                              Plainview, NY 11803
                              516-741-2585

Exhibit "A"



# NEW CENTURY™
MORTGAGE CORPORATION
COMMERCIAL REAL ESTATE DIVISION

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | | | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $287,000.00 | 11-08-2004 | 12-03-2034 | | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** Area Plumbing Supply, Inc
109-24 101st Avenue
Ozone Park, NY 11419

**Lender:** New Century Mortgage Corporation
Melville Processing Center
Two Huntington Quadrangle, Suite 1S01
Melville, NY 11747

**Principal Amount: $287,000.00**

**Date of Note: November 8, 2004**

**PROMISE TO PAY.** To repay Borrower's loan, Area Plumbing Supply, Inc ("Borrower") promises to pay to New Century Mortgage Corporation ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Eighty-seven Thousand & 00/100 Dollars ($287,000.00), together with interest on the unpaid principal balance from November 10, 2004, until paid in full. The interest rate will not increase above 13.375%.

**PAYMENT.** Subject to any payment changes resulting from changes in the index, Borrower will pay this loan in accordance with the following payment schedule: 36 monthly consecutive principal and interest payments in the initial amount of $1,982.24 each, beginning January 1, 2005, with interest calculated on the unpaid principal balances at an initial discounted interest rate of 7.375% per annum; 323 monthly consecutive principal and interest payments in the initial amount of $2,169.73 each, beginning January 1, 2008, with interest calculated on the unpaid principal balances at a discounted interest rate based on the 6 month LIBOR as published in the Wall Street Journal 45 days prior to the adjustment date (currently 2.340%), plus a margin of 6.000 percentage points, the sum rounded to the nearest 0.125 percent, resulting in an initial interest rate of 8.375%; and one principal and interest payment of $2,169.50 on December 1, 2034, with interest calculated on the unpaid principal balances at an interest rate based on the 6 month LIBOR as published in the Wall Street Journal 45 days prior to the adjustment date (currently 2.340%), plus a margin of 6.000 percentage points, the sum rounded to the nearest 0.125 percent, resulting in an initial interest rate of 8.375%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** For the first 36 payments, the interest rate on this Note will be 7.375%. Thereafter, the interest rate on this Note is subject to change from time to time based on changes in an independent index which is the 6 month LIBOR as published in the Wall Street Journal 45 days prior to the adjustment date (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each 6 months. Borrower understands that Lender may make loans based on other rates as well. The index currently is 2.340% per annum. The interest rate or rates to be applied to the unpaid principal balance of this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. Notwithstanding the foregoing, the variable interest rate or rates provided for in this Note will be subject to the following minimum and maximum rates. NOTICE: Under no circumstances will the interest rate on this Note be less than 7.375% per annum or more than (except for any higher default rate shown below) the lesser of 13.375% per annum or the maximum rate allowed by applicable law. Notwithstanding the above provisions, the maximum increase or decrease in the interest rate at any one time on this loan will not exceed 1.000 percentage points. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT PENALTY.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: See attached exhibit - Prepayment Fee Addendum. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: New Century Mortgage Corporation, 18400 Von Karman, Suite 1000 Irvine, CA 92612.

**LATE CHARGE.** If a payment is 16 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 9.000 percentage points over the index. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

# PROMISSORY NOTE
## (Continued)

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Borrower agrees to pay all costs and expenses Lender incurs to collect this Note. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of New York. This Note has been accepted by Lender in the State of New York.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $20.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by Real Property located at 109-22 101st Avenue, Ozone Park, New York 11419. If there is any inconsistency between the terms and conditions of this Note and the terms and conditions of the collateral documents, the terms and conditions of this Note shall prevail.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Promissory Note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: New Century Mortgage Corporation P.O. Box 54285 Irvine, CA 92619

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

## PROMISSORY NOTE
### (Continued)

Page 3

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

AREA PLUMBING SUPPLY, INC

By: _____
Mousa Khalil, President of Area Plumbing Supply,
Inc

---

Pay to the order of, without recourse

New Century Mortgage Corporation

By: _____
Name: Magda Villanueva
Title: A.V.P. / Shipping Manager

# ALLONGE TO THE NOTE

**LOAN #:** ███████████

**NOTE DATED:** October 20, 2004

**IN FAVOR OF:**

*NEW CENTURY MORTGAGE CORPORATION*

**AND EXECUTED BY:** Area Plumbing Supply

**PAY TO THE ORDER OF WITHOUT RECOURSE:**

*NEW CENTURY MORTGAGE CORPORATION*

BY: *Magda Villanueva*

NAME: Magda Villanueva

TITLE: A.V.P./ Shipping Manager



# PROMISSORY NOTE

| Principal | Loan Date | Maturity | | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $275,000.00 | 11-08-2004 | 12-01-2034 | | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Area Plumbing Supply, Inc
8001 4th Avenue
Brooklyn, NY 11220

**Lender:**  New Century Mortgage Corporation
Melville Processing Center
Two Huntington Quadrangle, Suite 1601
Melville, NY 11747

**Principal Amount: $275,000.00**                          **Date of Note: November 8, 2004**

**PROMISE TO PAY.** To repay Borrower's loan, Area Plumbing Supply, Inc ("Borrower") promises to pay to New Century Mortgage Corporation ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Seventy-five Thousand & 00/100 Dollars ($275,000.00), together with interest on the unpaid principal balance from November 10, 2004, until paid in full. The interest rate will not increase above 13.375%.

**PAYMENT.** Subject to any payment changes resulting from changes in the index, Borrower will pay this loan in accordance with the following payment schedule: 36 monthly consecutive principal and interest payments in the initial amount of $1,899.36 each, beginning January 1, 2005, with interest calculated on the unpaid principal balances at an initial discounted interest rate of 7.375% per annum; 323 monthly consecutive principal and interest payments in the initial amount of $2,058.21 each, beginning January 1, 2008, with interest calculated on the unpaid principal balances at a discounted interest rate based on the 6 month LIBOR as published in the Wall Street Journal 45 days prior to the adjustment date (currently 2.211%), plus a margin of 6.000 percentage points, the sum rounded to the nearest 0.125 percent, resulting in an initial interest rate of 8.250%; and one principal and interest payment of $2,050.65 on December 1, 2034, with interest calculated on the unpaid principal balances at an interest rate based on the 6 month LIBOR as published in the Wall Street Journal 45 days prior to the adjustment date (currently 2.211%), plus a margin of 6.000 percentage points, the sum rounded to the nearest 0.125 percent, resulting in an interest rate of 8.250%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** For the first 36 payments, the interest rate on this Note will be 7.375%. Thereafter, the interest rate on this Note is subject to change from time to time based on changes in an independent index which is the 6 month LIBOR as published in the Wall Street Journal 45 days prior to the adjustment date (the "Index"). The index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each 6 months. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 2.211% per annum. The interest rate or rates to be applied to the unpaid principal balance of this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. Notwithstanding the foregoing, the variable interest rate or rates provided for in this Note will be subject to the following minimum and maximum rates. NOTICE: Under no circumstances will the interest rate on this Note be less than 7.375% per annum or more than (except for any higher default rate shown below) the lesser of 13.375% per annum or the maximum rate allowed by applicable law. Notwithstanding the above provisions, the maximum interest rate or decrease in the interest rate at any one time on this loan will not exceed 1.000 percentage points. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT PENALTY.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Upon prepayment of this Note, Borrower will be entitled to the following prepayment penalty: See attached exhibit - Prepayment Fee Addendum. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: New Century Mortgage Corporation, 18400 Von Karman, Suite 1000 Irvine, CA 92612.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 9.000 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

PROMISSORY NOTE
(Continued)

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Borrower agrees to pay all costs and expenses Lender incurs to collect this Note. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of New York. This Note has been accepted by Lender in the State of New York.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $20.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by Real Property located at 109-24 101 Avenue, Ozone Park, NY 11419. If there is any inconsistency between the terms and conditions of this Note and the terms and conditions of the collateral documents, the terms and conditions of this Note shall prevail.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Promissory Note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: New Century Mortgage Corporation P.O. Box 54285 Irvine, CA 92619

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.



PROMISSORY NOTE
(Continued)

Page 3

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

AREA PLUMBING SUPPLY, INC.

By: _____
Mouss  Kheili, President of Area Plumbing Supply, Inc

---

Pay to the order of, without recourse

New Century Mortgage Corporation

By: _____
Name: Marcia Villanueva
Title: A.V.P. / Shipping Manager



NEW CENTURY
MORTGAGE CORPORATION
COMMERCIAL REAL ESTATE DIVISION

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $261,000.00 | 11-08-2004 | 12-01-2034 | | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Area Plumbing Supply, Inc.
6001 4th Avenue
Brooklyn, NY 11220

**Lender:** New Century Mortgage Corporation
Melville Processing Center
Two Huntington Quadrangle, Suite 1S01
Melville, NY 11747

### Principal Amount: $261,000.00

Date of Note: November 8, 2004

**PROMISE TO PAY.** To repay Borrower's loan, Area Plumbing Supply, Inc. ("Borrower") promise to pay to New Century Mortgage Corporation ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Sixty-one Thousand & 00/100 Dollars ($261,000.00), together with interest on the unpaid principal balance from November 10, 2004, until paid in full. The interest rate will not increase above 13.375%.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule: 35 monthly consecutive principal and interest payments in the initial amount of $1,802.67 each, beginning January 1, 2005, with interest calculated on the unpaid principal balances at an initial discounted interest rate of 7.375% per annum; 1 consecutive principal and interest payments in the initial amount of $1,929.98 each, beginning January 1, 2008, with interest calculated on the unpaid principal balances at a discounted interest rate based on the 6 month LIBOR as published in the Wall Street Journal 45 days prior to the adjustment date (currently 2.170%), plus a margin of 6.125%; and one principal and interest payment of $1,921.31 on December 1, 2034, with interest calculated on the unpaid principal balances at an interest rate based on the 6 month LIBOR as published in the Wall Street Journal 45 days prior to the adjustment date (currently 2.170%), plus a margin of 6.000 percentage points, the sum rounded to the nearest 0.125 percent, resulting in an initial interest rate of 8.125%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the index does not change; the actual final payment is based on the assumption that all payments will be made exactly as scheduled and that the interest rate under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** For the first 36 payments, the interest rate on this Note will be 7.375%. Thereafter, the interest rate on this Note is subject to change from time to time based on changes in an independent index which is the 6 month LIBOR as published in the Wall Street Journal 45 days prior to the adjustment date (the "Index"). The index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each 6 months. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 2.170% per annum. The interest rate or rates to be applied to the unpaid principal balance of this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. Notwithstanding the foregoing, the variable interest rate or rates provided for in this Note will be subject to the following minimum and maximum rates. NOTICE: Under no circumstances will the interest rate on this Note be less than 7.375% per annum or more than (except for any higher default rate shown below) the lesser of 13.375% per annum or the maximum rate allowed by applicable law. Notwithstanding the above provisions, the maximum interest or increase in the interest rate at any one time on this loan will not exceed 1.000 percentage points. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT PENALTY.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: See attached details - Prepayment Fee Addendum. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the disputed amount or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: New Century Mortgage Corporation, 18400 Von Karman, Suite 1000 Irvine, CA 92612.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 9.000 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

PROMISSORY NOTE
(Continued)

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Borrower agrees to pay all costs and expenses Lender incurs to collect this Note. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of New York. This Note has been accepted by Lender in the State of New York.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $20.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by Real Property located at 109-26 1D1 Avenue, Ozone Park, NY 11419. If there is any inconsistency between the terms and conditions of this Note and the terms and conditions of the collateral documents, the terms and conditions of this Note shall prevail.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Promissory Note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: New Century Mortgage Corporation P.O. Box 54285 Irvine, CA 92619

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PROMISSORY NOTE
(Continued)

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.
BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

AREA PLUMBING SUPPLY, INC.

By: _____
Mousa Khalil, President of Area Plumbing Supply, Inc.

---

Pay to the order of, without recourse

New Century Mortgage Corporation

By: _____
Name: Magda Villanueva
Title: A.V.P. / Shipping Manager



# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $347,000.00 | 11-09-2004 | 12-01-2034 | | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Area Plumbing Supply, Inc.
109-24 101st Avenue
Ozone Park, NY  11419

**Lender:** New Century Mortgage Corporation
Melville Processing Center
Two Huntington Quadrangle, Suite 1501
Melville, NY  11747

---

**Principal Amount: $347,000.00**  
**Date of Note: November 9, 2004**

**PROMISE TO PAY.** To repay Borrower's loan, Area Plumbing Supply, Inc. ("Borrower") promises to pay to New Century Mortgage Corporation ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Forty-seven Thousand & 00/100 Dollars ($347,000.00), together with interest on the unpaid principal balance from November 10, 2004, until paid in full. The interest rate will not increase above 13.125%.

**PAYMENT.** Subject to any payment changes resulting from changes in the index, Borrower will pay this loan in accordance with the following payment schedule: 36 monthly consecutive principal and interest payments in the initial amount of $2,337.51 each, beginning January 1, 2005, with interest calculated on the unpaid principal balances at an initial discounted interest rate of 7.125% per annum; 323 monthly consecutive principal and interest payments in the initial amount of $2,393.09 each, beginning January 1, 2008, with interest calculated on the unpaid principal balances at a discounted interest rate based on the 6 month LIBOR as published in the Wall Street Journal 45 days prior to the adjustment date (currently 2.340%), plus a margin of 5.000 percentage points, the sum rounded to the nearest 0.125 percent, resulting in an initial interest rate of 7.375%; and one principal and interest payment of $2,393.10 on December 1, 2034, with interest calculated on the unpaid principal balances at an interest rate based on the 6 month LIBOR as published in the Wall Street Journal 45 days prior to the adjustment date (currently 2.340%), plus a margin of 5.000 percentage points, the sum rounded to the nearest 0.125 percent, resulting in an initial interest rate of 7.375%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** For the first 36 payments, the interest rate on this Note will be 7.125%. Thereafter, the interest rate on this Note is subject to change from time to time based on changes in an independent index which is the 6 month LIBOR as published in the Wall Street Journal 45 days prior to the adjustment date (the "index"). The index is not necessarily the lowest rate charged by Lender on its loans. If the index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each 6 months. Borrower understands that Lender may make loans based on other rates as well. The index currently is 2.340% per annum. The interest rate or rates to be applied to the unpaid principal balance of this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. Notwithstanding the foregoing, the variable interest rate or rates described for in this Note will be subject to the following minimum and maximum rates. NOTICE: Under no circumstances will the interest rate on this Note be less than 7.125% per annum or more than (except for any higher default rate shown below) the lesser of 13.125% per annum or the maximum rate allowed by applicable law. Notwithstanding the above provisions, the maximum increase or decrease in the interest rate at any one time on this loan will not exceed 1.000 percentage points. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT PENALTY.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Upon prepayment of this Note, Lender is entitled to the following prepayment premium: See attached exhibit - Prepayment Fee Addendum. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: New Century Mortgage Corporation, 18400 Von Karman, Suite 1000 Irvine, CA  92612.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 8.000 percentage points over the index. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

# PROMISSORY NOTE
## (Continued)

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Borrower agrees to pay all costs and expenses Lender incurs to collect this Note. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of New York. This Note has been accepted by Lender in the State of New York.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $20.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by Real Property located at 103-26 101st Avenue, Ozone Park, New York 11419. If there is any inconsistency between the terms and conditions of this Note and the terms and conditions of the collateral documents, the terms and conditions of this Note shall prevail.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Promissory Note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: New Century Mortgage Corporation P.O. Box 54285 Irvine, CA 92619

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

# PROMISSORY NOTE
## (Continued)

Page 3

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

AREA PLUMBING SUPPLY, INC.

By: _____
Modea Khalil, President of Area Plumbing Supply, Inc.

---

Pay to the order of, without recourse

New Century Mortgage Corporation

By: _____
Name: Magda Villanueva
Title: A.V.P. / Shipping Manager

# ALLONGE TO THE NOTE

**LOAN #:** ████████

**NOTE DATED:** October 20, 2004

**IN FAVOR OF:**

*NEW CENTURY MORTGAGE CORPORATION*

**AND EXECUTED BY:** Area Plumbing Supply

**PAY TO THE ORDER OF WITHOUT RECOURSE:**

*NEW CENTURY MORTGAGE CORPORATION*

**BY:** _Magda Villanueva_

**NAME:** Magda Villanueva

**TITLE:** A.V.P./ Shipping Manager

Exhibit "B"



## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

### RECORDING AND ENDORSEMENT COVER PAGE
PAGE 1 OF 11

| | | |
|---|---|---|
| Document ID: 2004111200115001 | Document Date: 11-08-2004 | Preparation Date: 11-12-2004 |
| Document Type: MORTGAGE | | |
| Document Page Count: 10 | | |

**PRESENTER:**
TITLEONE, INC (04TO1117Q)
AS AGENT FOR FIDELITY NATIONAL TITLE
269 86TH STREET
BROOKLYN, NY 11209
718-745-0024
titleone@nydata.com

**RETURN TO:**
NEW CENTURY MORTGAGE CORPORATION
18400 VON KARMAN, SUITE 1000
IRVINE, CA 92612

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9427 | 7 | Entire Lot | 109-22 101 AVENUE |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

### CROSS REFERENCE DATA

CRFN_____ or  Document ID_____ or _____ Year_____ Reel ___ Page ____ or File Number_____

### PARTIES

**MORTGAGER/BORROWER:**
AREA PLUMBING SUPPLY, INC.
109-24 101ST AVENUE
OZONE PARK, NY 11419

**MORTGAGEE/LENDER:**
NEW CENTURY MORTGAGE CORPORATION
TWO HUNTINGTON QUADRANGLE, SUITE 1S01
MELVILLE, NY 11747

### FEES AND TAXES

| Mortgage | | | |
|---|---|---|---|
| Mortgage Amount: | $ | 287,000.00 | |
| Taxable Mortgage Amount: | $ | 287,000.00 | |
| Exemption: | | | |
| TAXES: County (Basic): | $ | 1,435.00 | |
| City (Additional): | $ | 2,870.00 | |
| Spec (Additional): | $ | 717.50 | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 717.50 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 5,740.00 | |

Recording Fee: $ 87.00
Affidavit Fee: $ 0.00
NYC Real Property Transfer Tax Filing Fee:
$ 0.00
NYS Real Estate Transfer Tax:
$ 0.00

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed    02-22-2005 17:38
City Register File No.(CRFN):
2005000108071

*Annette M Hill*
*City Register Official Signature*

WHEN RECORDED MAIL TO:
New Century Mortgage Corporation
18400 Von Karman, Suite 1000
Irvine, CA 92612

## MORTGAGE

NOTICE: THIS MORTGAGE SECURES A NOTE WHICH CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE INTEREST RATE.

MAXIMUM LIEN. The lien of this Mortgage shall not exceed at any one time $287,000.00.

THIS MORTGAGE dated November 8, 2004, is made and executed between Area Plumbing Supply, Inc, whose address is 109-24 101st Avenue, Ozone Park, NY 11419 (referred to below as "Grantor") and New Century Mortgage Corporation, whose address is Two Huntington Quadrangle, Suite 1S01, Melville, NY 11747 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages, grants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Queens County, State of New York:

See Exhibit A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 109-22 101st Avenue, Ozone Park, NY 11419. The Real Property tax identification number is Block: 9427 Lot: 7

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be

*1-3 family with store / office*

FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NY

04TO1117Q

## SCHEDULE A

ALL that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Queens, City and State of New York, known and designated as Lot No 54 in Block 9 on a certain map entitled, "Map of Property in the Town of Jamaica Queens County, belonging to Ozone Park Land Company Plot 1" surveyed April 1891 by E. W. Conklin and Filed as Map No. 267 in the office of the Clerk, now Register of Queens County on July 17, 1891, more particularly bounded and described as follows:

BEGINNING at a point on the southerly side of 101st Avenue (formerly Jerome, formerly Broadway) distant 50 feet westerly from the corner formed by the intersection of the southerly side of 101st Avenue with the westerly side of 110th Street (formerly Bedford Avenue);

RUNNING THENCE southerly and parallel with 110th Street, 100 feet;

THENCE westerly and parallel with 101st Avenue, 25 feet;

THENCE northerly and parallel again with 110th Street, 100 feet to the southerly side of 101st Avenue and;

THENCE RUNNING easterly along the southerly side of 101st Avenue, 25 feet to the point or place of BEGINNING.


NOTE: TO BE INCLUDED IN ALL CLOSING DOCUMENTS BUT NOT FOR POLICY:
Said premises being known as and by the street address
109-22 101 Avenue, Ozone Park, NY

Presented by:
**TITLE ONE INC.**

*Questions/Comments:*
Phone:  718-745-0024
Email:  titleone@nydata.com

# MORTGAGE
## (Continued)

construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**AGREEMENTS ABOUT NEW YORK LIEN LAW.** Grantor shall receive all amounts lent to Grantor by Lender subject to the trust fund provisions of the New York Lien Law.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by New York law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $25,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

# MORGAGE
## (Continued)

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

Maintenance of Insurance. Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

Application of Proceeds. Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

Grantor's Report on Insurance. Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**TAX AND INSURANCE RESERVES.** Subject to any limitations set by applicable law, Lender may require Grantor to maintain with Lender reserves for payment of annual taxes, assessments, and insurance premiums, which reserves shall be created by advance payment or monthly payments of a sum estimated by Lender to be sufficient to produce, amounts at least equal to the taxes, assessments, and insurance premiums to be paid. The reserve funds shall be held by Lender as a general deposit from Grantor, which Lender may satisfy by payment of the taxes, assessments, and insurance premiums required to be paid by Grantor as they become due. Lender shall have the right to draw upon the reserve funds to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Mortgage shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the reserve funds disclose a shortage or deficiency, Grantor shall pay such shortage or deficiency as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes, with the exception of insurance premiums paid by Lender with respect to motor vehicles, but including the payment of attorneys' fees and expenses, will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property

# MORTGAGE
## (Continued)

against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse



# MORGAGE
## (Continued)

Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to

Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. The right to a receiver shall be given to Lender regardless of the solvency of Grantor and without any requirement to give notice to Grantor.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** Grantor gives Lender a power of sale over Grantor's interest in all or in any part of the Personal Property or the Real Property subject to the Mortgage. This means that Lender will be authorized to sell all property subject to the Mortgage in connection with a non-judicial foreclosure proceeding. Lender is authorized to commence a non-judicial foreclosure proceeding as may be permitted by applicable law, including Article 14 of the New York Real Property Actions and Proceedings Law and any amendments or successors to that law.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender will be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness. Expenses covered by this paragraph include, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**PROHIBITION AGAINST JUNIOR LIENS AND DUE ON ENCUMBRANCE.** Without Lender's prior written approval, Grantor shall not be permitted to encumber the Real Property by any lien junior to or of equal priority with the lien of the Mortgage (Deed of Trust). Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage (Deed of Trust) upon the encumbrance of the Real Property by any lien junior to or of equal priority with the lien of the Mortgage (Deed of Trust).

**POWERS OF ATTORNEY.** The various agencies and powers of attorney conveyed on Lender under this Mortgage are granted for purposes

# MORTGAGE
(Continued)

of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**LEGAL DESCRIPTION INDEMNIFICATION.** Grantor has read and does hereby approve the legal description of the Real Property attached hereto, and hereby indemnifies Lender, it successors and assigns, and their attorneys with respect to any liability which might arise.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by, construed and enforced in accordance with federal law and the laws of the State of New York. This Mortgage has been accepted by Lender in the State of New York.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Area Plumbing Supply, Inc and includes all co-signers and co-makers signing the Note.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Area Plumbing Supply, Inc.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

# MORTGAGE
## (Continued)

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, including attorneys' fees, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means New Century Mortgage Corporation, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated November 8, 2004, **in the original principal amount of $287,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Mortgage is December 1, 2034. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

AREA PLUMBING SUPPLY, INC.

By: _____
Mousa Khalil, President of Area Plumbing Supply, Inc

**MORTGAGE**
**(Continued)**

Page 9

---

## CORPORATE ACKNOWLEDGMENT

STATE OF _New York_ )
                                    ) SS
COUNTY OF _Kings_ )

On the ___ day of _November_ in the year 20_0_/ before me, the undersigned, a Notary Public in and for said State, personally appeared Mousa Khalil, President of Area Plumbing Supply, Inc, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he or she executed the same in his or her capacity, and that by his or her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

By _____
Notary Public

My commission expires: **Anthoula Lignos**
Notary Public
Commission in Kings County
State of New York
# 01LI6098120
Commission Exp. Sept. 2, 2007

LASER PRO Lending, Ver. 5.24.00.002  Copr. Harland Financial Solutions, Inc. 1997, 2004  All Rights Reserved.  - NY  J:\HARLAND\CFI\LPL\G03.FC  TR-1431  PR-168

## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 11 |
|---|---|---|
| **Document ID:** 2004111200218001 | **Document Date:** 11-08-2004 | |
| **Document Type:** MORTGAGE | | **Preparation Date:** 11-12-2004 |
| **Document Page Count:** 10 | | |

**PRESENTER:**
TITLEONE, INC (04TO1118Q)
AS AGENT FOR FIDELITY NATIONAL TITLE
269 86TH STREET
BROOKLYN, NY 11209
718-745-0024
titleone@nydata.com

**RETURN TO:**
NEW CENTURY MORTGAGE CORPORATION
18400 VON KARMAN, SUITE 1000
IRVINE, CA 92612

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9427 | 8 | Entire Lot | 109-24 101 AVENUE |

**Property Type:** 1-3 FAMILY WITH STORE / OFFICE

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year_____ Reel ____ Page _____ or File Number_____

### PARTIES

**MORTGAGER/BORROWER:**
AREA PLUMBING SUPPLY, INC.
109-24 101 AVENUE
OZONE PARK, NY 11419

**MORTGAGEE/LENDER:**
NEW CENTURY MORTGAGE CORPORATION
TWO HUNTINGTON QUADRANGLE, SUITE 1S01
MELVILLE, NY 11747

### FEES AND TAXES

| Mortgage | | | | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 275,000.00 | Recording Fee: $ | | 87.00 |
| Taxable Mortgage Amount: | $ | 275,000.00 | Affidavit Fee: $ | | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax Filing Fee: | | |
| TAXES: County (Basic): | $ | 1,375.00 | | $ | 0.00 |
| City (Additional): | $ | 2,750.00 | NYS Real Estate Transfer Tax: | | |
| Spec (Additional): | $ | 687.50 | | $ | 0.00 |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 687.50 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 5,500.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    01-18-2005 11:23
City Register File No.(CRFN):
     2005000030806

*Annette M Hill*

*City Register Official Signature*

WHEN RECORDED MAIL TO:
New Century Mortgage Corporation
18400 Von Karman, Suite 1000
Irvine, CA 92612

_____ FOR RECORDER'S USE ONLY

## MORTGAGE

NOTICE: THIS MORTGAGE SECURES A NOTE WHICH CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE INTEREST RATE.

MAXIMUM LIEN. The lien of this Mortgage shall not exceed at any one time $275,000.00.

THIS MORTGAGE dated November 8, 2004, is made and executed between Area Plumbing Supply, Inc, whose address is 109-24 101 Avenue, Ozone Park, NY 11419 (referred to below as "Grantor") and New Century Mortgage Corporation, whose address is Two Huntington Quadrangle, Suite 1S01, Melville, NY 11747 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages, grants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Queens County, State of New York:

    See Exhibit A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 109-24 101 Avenue, Ozone Park, NY 11419. The Real Property tax identification number is Block 9427 Lot8

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

    Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

    Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be

*1 - 3 family with store / office* ✓

FIDELITY NATIONAL TITLE INSURANCE COMPANY

TITLE #: 04TO1118Q

## SCHEDULE A

ALL that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of 101st Avenue, distant 32.232 feet westerly from the corner formed by the intersection of the southerly side of 101st Avenue with the westerly side of 110th Street,

THENCE southerly and parallel with 110th Street, and part of the distance through a party wall, 60.093 feet

THENCE westerly at right angles to 110th Street, 16.82 feet;

THENCE northerly and parallel with 110th Street, 60.093 feet to the southerly side of 101st Avenue;

THENCE easterly along the southerly side of 101st Avenue, 16.82 feet to the point or place of BEGINNING

*NOTE: TO BE INCLUDED IN ALL CLOSING DOCUMENTS BUT NOT FOR POLICY:*
Said premises being known as and by the street address
109-24 101 Avenue, Ozone Park, NY

*Presented by:*
**TITLE ONE INC.**

*Questions/Comments:*
Phone: 718-745-0024
Email: titleone@nydata.com



# MORGAGE
## (Continued)

construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**AGREEMENTS ABOUT NEW YORK LIEN LAW.** Grantor shall receive all amounts lent to Grantor by Lender subject to the trust fund provisions of the New York Lien Law.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by New York law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $25,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.



# MORTGAGE
## (Continued)

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

Maintenance of Insurance. Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

Application of Proceeds. Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

Grantor's Report on Insurance. Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**TAX AND INSURANCE RESERVES.** Subject to any limitations set by applicable law, Lender may require Grantor to maintain with Lender reserves for payment of annual taxes, assessments, and insurance premiums, which reserves shall be created by advance payment or monthly payments of a sum estimated by Lender to be sufficient to produce, amounts at least equal to the taxes, assessments, and insurance premiums to be paid. The reserve funds shall be held by Lender as a general deposit from Grantor, which Lender may satisfy by payment of the taxes, assessments, and insurance premiums required to be paid by Grantor as they become due. Lender shall have the right to draw upon the reserve funds to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Mortgage shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the reserve funds disclose a shortage or deficiency, Grantor shall pay such shortage or deficiency as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes, with the exception of insurance premiums paid by Lender with respect to motor vehicles, but including the payment of attorneys' fees and expenses, will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property



# MORTGAGE
## (Continued)

against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse



# MORGAGE
## (Continued)

Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights, or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to

# MORGAGE
## (Continued)

Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. The right to a receiver shall be given to Lender regardless of the solvency of Grantor and without any requirement to give notice to Grantor.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender will be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness. Expenses covered by this paragraph include, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of the Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**PROHIBITION AGAINST JUNIOR LIENS AND DUE ON ENCUMBRANCE.** Without Lender's prior written approval, Grantor shall not be permitted to encumber the Real Property by any lien junior to or of equal priority with the lien of the Mortgage (Deed of Trust). Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage (Deed of Trust) upon the encumbrance of the Real Property by any lien junior to or of equal priority with the lien of the Mortgage (Deed of Trust).

**POWERS OF ATTORNEY.** The various agencies and powers of attorney conveyed on Lender under this Mortgage are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**LEGAL DESCRIPTION INDEMNIFICATION.** Grantor has read and does hereby approve the legal description of the Real Property attached hereto, and hereby indemnifies Lender, it successors and assigns, and their attorneys with respect to any liability which might arise.

# MORGAGE
## (Continued)

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by, construed and enforced in accordance with federal law and the laws of the State of New York. This Mortgage has been accepted by Lender in the State of New York.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Area Plumbing Supply, Inc and includes all co-signers and co-makers signing the Note.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Area Plumbing Supply, Inc.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment

## MORTGAGE
### (Continued)

when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, including attorneys' fees, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means New Century Mortgage Corporation, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated November 8, 2004, **in the original principal amount of $275,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Mortgage is December 1, 2034. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

AREA PLUMBING SUPPLY, INC

By: _____
Moues Khalil, President of Area Plumbing Supply, Inc

**MORGAGE**
(Continued)

## CORPORATE ACKNOWLEDGMENT

STATE OF ___NEW YORK___ }
COUNTY OF ___KINGS___ } SS
}

On the ___8th___ day of ___NOVEMBER___ in the year 20___14___ before me, the undersigned, a Notary Public in and for said State, personally appeared Mousa Khalil, President of Area Plumbing Supply, Inc, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he or she executed the same in his or her capacity, and that by his or her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

By _____
     Notary Public

My commission expires

**Anthoula Lignos**
Notary Public
Commission in Kings County
State of New York
# 01LI6098120
Commission Exp. Sept. 2  20??

LASER PRO Lending, Ver. 5.24.00.000  Copr. Harland Financial Solutions, Inc. 1997, 2004.  All Rights Reserved.  - NY  K?HARLAND?PR.100S RC  TR-14?9  PR-122

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 11 |
|---|---|

| Document ID: 2004111200262001 | Document Date: 11-08-2004 | Preparation Date: 11-12-2004 |
|---|---|---|

Document Type: MORTGAGE
Document Page Count: 10

**PRESENTER:**
TITLEONE, INC (04T0I119Q)
AS AGENT FOR FIDELITY NATIONAL TITLE
269 86TH STREET
BROOKLYN, NY 11209
718-745-0024
titleone@nydata.com

**RETURN TO:**
NEW CENTURY MORTGAGE CORPORATION
18400 VON KARMAN, SUITE 1000
IRVINE, CA 92612

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9427 | 9 | Entire Lot | 109-26 101 AVENUE |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

**CROSS REFERENCE DATA**

CRFN_____ or Document ID_____ or _____ Year____ Reel ___ Page____ or File Number_____

**PARTIES:**

**MORTGAGER/BORROWER:**
MOUSA KHALIL
109-26 101 AVENUE
OZONE PARK, NY 11419

**MORTGAGEE/LENDER:**
NEW CENTURY MORTGAGE CORPORATION
TWO HUNTINGTON QUADRANGLE, SUITE 1S01
MELVILLE, NY 11747

**FEES AND TAXES**

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 261,000.00 | Recording Fee: $ | 87.00 |
| Taxable Mortgage Amount: | $ | 261,000.00 | Affidavit Fee: $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax Filing Fee: | |
| TAXES: County (Basic): | $ | 1,305.00 | $ | 0.00 |
| City (Additional): | $ | 2,610.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 652.50 | $ | 0.00 |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 652.50 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 5,220.00 | | |

RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK
Recorded/Filed 01-18-2005 14:40
City Register File No.(CRFN): 2005000032344

*City Register Official Signature*

**WHEN RECORDED MAIL TO:**
New Century Mortgage Corporation
18400 Von Karman, Suite 1000
Irvine, CA 92612

<u>FOR RECORDER'S USE ONLY</u>

## MORTGAGE

NOTICE: THIS MORTGAGE SECURES A NOTE WHICH CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE INTEREST RATE.

MAXIMUM LIEN. The lien of this Mortgage shall not exceed at any one time $261,000.00.

THIS MORTGAGE dated November 8, 2004, is made and executed between Mousa Khalil, whose address is 109-26 101 Avenue, Ozone Park, NY 11419 (referred to below as "Grantor") and New Century Mortgage Corporation, whose address is Two Huntington Quadrangle, Suite 1S01, Melville, NY 11747 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages, grants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Queens County, State of New York:

    See Exhibit A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 109-26 101 Avenue, Ozone Park, NY 11419. The Real Property tax identification number is Block 9427 Lot 9

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

GRANTOR'S WAIVERS. Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

    Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

    Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership

*1-3 family with store/office*

FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NY

04TO1119Q

## SCHEDULE A

ALL that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly line of 101st Avenue distant 17.26 feet westerly from the intersection of the southerly side of 101st Avenue with the westerly side of 110th Street;

RUNNING THENCE southerly parallel with 110th Street through a party wall a distance of 60.09 feet.

THENCE westerly at right angles to 110th Street a distance of 15.97 feet;

THENCE northerly and parallel with 110th Street through a party wall a distance of 60.09 feet to the southerly side of 101st Avenue and;

THENCE easterly along the southerly side of 101st Avenue, 15.97 feet to the point or place of BEGINNING

*NOTE: TO BE INCLUDED IN ALL CLOSING DOCUMENTS BUT NOT FOR POLICY:*
**Said premises being known as and by the street address**
**109-26 101 Avenue, Ozone Park, NY**

*Questions/Comments:*
Phone: 718-745-0024
Email: titleone@nydata.com

# MORTGAGE
## (Continued)

Loan No.                                                                                              Page 2

of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Nuisance, Waste. Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

Removal of Improvements. Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

Lender's Right to Enter. Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

Compliance with Governmental Requirements. Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

Duty to Protect. Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

AGREEMENTS ABOUT NEW YORK LIEN LAW. Borrower shall receive all amounts lent to Borrower by Lender subject to the trust fund provisions of the New York Lien Law.

DUE ON SALE - CONSENT BY LENDER. Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by New York law.

TAXES AND LIENS. The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

Payment. Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

Right to Contest. Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and

## MORTGAGE
### (Continued)

Loan No                                                                            Page 3

Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $25,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**TAX AND INSURANCE RESERVES.** Subject to any limitations set by applicable law, Lender may require Grantor to maintain with Lender reserves for payment of annual taxes, assessments, and insurance premiums, which reserves shall be created by advance payment or monthly payments of a sum estimated by Lender to be sufficient to produce, amounts at least equal to the taxes, assessments, and insurance premiums to be paid. The reserve funds shall be held by Lender as a general deposit from Grantor, which Lender may satisfy by payment of the taxes, assessments, and insurance premiums required to be paid by Grantor as they become due. Lender shall have the right to draw upon the reserve funds to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Mortgage shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the reserve funds disclose a shortage or deficiency, Grantor shall pay such shortage or deficiency as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes, with the exception of insurance premiums paid by Lender with respect to motor vehicles, but including the payment of attorneys' fees and expenses, will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

# MORTGAGE
(Continued)

Loan No:                                                                    Page 4

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all

**MORTGAGE**
**(Continued)**

such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Other Defaults.** Borrower or Grantor fails to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**MORTGAGE**
**(Continued)**

Loan No:                                                        Page 6

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. The right to a receiver shall be given to Lender regardless of the solvency of Borrower and without any requirement to give notice to Borrower or Grantor.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender will be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness. Expenses covered by this paragraph include, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**PROHIBITION AGAINST JUNIOR LIENS AND DUE ON ENCUMBRANCE.** Without Lender's prior written approval, Grantor shall not be permitted to encumber the Real Property by any lien junior to or of equal priority with the lien of the Mortgage (Deed of Trust). Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage (Deed of Trust) upon the encumbrance of the Real Property by any lien junior to or of equal priority with the lien of the Mortgage (Deed of Trust).

**POWERS OF ATTORNEY.** The various agencies and powers of attorney conveyed on Lender under this Mortgage are granted for purposes

# MORTGAGE
## (Continued)

Loan No                                                                                    Page 7

of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**LEGAL DESCRIPTION INDEMNIFICATION.** Grantor has read and does hereby approve the legal description of the Real Property attached hereto, and hereby indemnifies Lender, it successors and assigns, and their attorneys with respect to any liability which might arise.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

    **Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

    **Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

    **Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

    **Governing Law.** This Mortgage will be governed by, construed and enforced in accordance with federal law and the laws of the State of New York. This Mortgage has been accepted by Lender in the State of New York.

    **Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Mortgage.

    **No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

    **Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

    **Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

    **Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

    **Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

    **Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code.

    **Borrower.** The word "Borrower" means Area Plumbing Supply, Inc. and includes all co-signers and co-makers signing the Note.

    **Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

    **Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

    **Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

    **Grantor.** The word "Grantor" means Mousa Khalil.

# MORTGAGE
## (Continued)

Loan No:                                                                                      Page 8

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, including attorneys' fees, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means New Century Mortgage Corporation, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated November 8, 2004, in the original principal amount of $261,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Mortgage is December 1, 2034. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

X _____
Moues Khalil

MORTGAGE
(Continued)

Loan No                                                                                           Page 9

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _New York_ )
                                        ) SS
COUNTY OF _Kings_ )

On the _8th_ day of _November_ in the year 2004 before me, the undersigned, a Notary Public in and for said State, personally appeared Mousa Khalil, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he or she executed the same in his or her capacity, and that by his or her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

By _____                         My commission expires _____
       Notary Public

**Anthoula Lignos**
Notary Public
Commission in Kings County
State of New York
# 01LI6098120
Commission Exp. Sep. 9 ____

This is a true and correct copy of the original document recorded in the Office of the City Register of New York as attested by _____ on the _8_ day of _June_, 20 _04_ (not valid unless signed and dated)

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.

**RECORDING AND ENDORSEMENT COVER PAGE**                    **PAGE 1 OF 11**

| | |
|---|---|
| Document ID: 2004111200288001 | |
| Document Type: MORTGAGE | Document Date: 11-08-2004 |
| Document Page Count: 10 | Preparation Date: 11-12-2004 |

**PRESENTER:**

TITLEONE, INC (04TO1120Q)
AS AGENT FOR FIDELITY NATIONAL TITLE
269 86TH STREET
BROOKLYN, NY 11209
718-745-0024
titleone@nydata.com

**RETURN TO:**

NEW CENTURY MORTGAGE CORPORATION
18400 VON KARMAN, SUITE 1000
IRVINE, CA 92612

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9427 | 10 | Entire Lot | 109-28 101 AVENUE |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

**CROSS REFERENCE DATA**

CRFN_____ or Document ID_____ or _____ Year____ Reel ____ Page ____ or File Number_____

**PARTIES**

**MORTGAGER/BORROWER:**

AREA PLUMBING SUPPLY INC.
109-24 101ST AVENUE
OZONE PARK, NY 11419

**MORTGAGEE/LENDER:**

NEW CENTURY MORTGAGE CORPORATION
TWO HUNTINGTON QUADRANGLE, SUITE 1S01
MELVILLE, NY 11747

**FEES AND TAXES**

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 347,000.00 | Recording Fee: $ | 87.00 |
| Taxable Mortgage Amount: | $ | 347,000.00 | Affidavit Fee: $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax Filing Fee: | |
| TAXES: County (Basic): | $ | 1,735.00 | $ | 0.00 |
| City (Additional): | $ | 3,470.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 867.50 | $ | 0.00 |
| TASF: | $ | | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 867.50 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 6,940.00 | | |

**RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK**

Recorded/Filed          02-11-2005 13:06
City Register File No.(CRFN):
                                  2005000087807

*Annette M. Hill*

*City Register Official Signature*

WHEN RECORDED MAIL TO:
New Century Mortgage Corporation
18400 Von Karman, Suite 1000
Irvine, CA 92612

FOR RECORDER'S USE ONLY

## MORTGAGE

NOTICE: THIS MORTGAGE SECURES A NOTE WHICH CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE INTEREST RATE.

MAXIMUM LIEN. The lien of this Mortgage shall not exceed at any one time $347,000.00.

THIS MORTGAGE dated November 8, 2004, is made and executed between Area Plumbing Supply, Inc., whose address is 109-24 101st Avenue, Ozone Park, New York 11419 (referred to below as "Grantor") and New Century Mortgage Corporation, whose address is Two Huntington Quadrangle, Suite 1S01, Melville, NY 11747 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages, grants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Queens County, State of New York:

   See Exhibit A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 109-28 101st Avenue, Ozone Park, NY 11419. The Real Property tax identification number is Block: 9427 Lot: 10

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

   Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

   Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be

*1-3 family with store/office*

FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NY

04TO1120Q

## SCHEDULE A

ALL that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of 101st Avenue, formerly Broadway, with the westerly side of 110th Street, formerly Myrtle Avenue.

THENCE southerly along the westerly side of 110th Street, 60.093 feet;

THENCE westerly at right angles to 110th Street 17.26 feet,

THENCE northerly parallel with the westerly side of 110th Street and part of the distance through a party wall 60.093 feet to the southerly side of 101st Avenue;

THENCE easterly along the southerly side of 101st Avenue 17.26 feet to the corner at the point or place of BEGINNING.

NOTE: TO BE INCLUDED IN ALL CLOSING DOCUMENTS BUT NOT FOR POLICY:
Said premises being known as and by the street address
109-28 101 Avenue, Ozone Park, NY

*Presented by:*
**TITLE ONE INC.**

2

*Questions/Comments:*
Phone: 718-745-0024
Email: titleone@nydata.com

# MORTGAGE
## (Continued)

construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**AGREEMENTS ABOUT NEW YORK LIEN LAW.** Grantor shall receive all amounts lent to Grantor by Lender subject to the trust fund provisions of the New York Lien Law.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by New York law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $25,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.



## MORTGAGE
### (Continued)

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**TAX AND INSURANCE RESERVES.** Subject to any limitations set by applicable law, Lender may require Grantor to maintain with Lender reserves for payment of annual taxes, assessments, and insurance premiums, which reserves shall be created by advance payment or monthly payments of a sum estimated by Lender to be sufficient to produce, amounts at least equal to the taxes, assessments, and insurance premiums to be paid. The reserve funds shall be held by Lender as a general deposit from Grantor, which Lender may satisfy by payment of the taxes, assessments, and insurance premiums required to be paid by Grantor as they become due. Lender shall have the right to draw upon the reserve funds to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Mortgage shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the reserve funds disclose a shortage or deficiency, Grantor shall pay such shortage or deficiency as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property



## MORGTGAGE
### (Continued)

against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse



## MORGAGE
**(Continued)**

Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to affect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to

## MORGAGE
## (Continued)

Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

Appoint Receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. The right to a receiver shall be given to Lender regardless of the solvency of Grantor and without any requirement to give notice to Grantor.

Judicial Foreclosure. Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

Deficiency Judgment. If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

Tenancy at Sufferance. If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

Other Remedies. Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

Sale of the Property. To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

Notice of Sale. Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

Election of Remedies. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

Attorneys' Fees; Expenses. If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender will be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness. Expenses covered by this paragraph include, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

NOTICES. Any notice required to be given under this Mortgage shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

PROHIBITION AGAINST JUNIOR LIENS AND DUE ON ENCUMBRANCE. Without Lender's prior written approval, Grantor shall not be permitted to encumber the Real Property by any lien junior to or of equal priority with the lien of the Mortgage (Deed of Trust). Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage (Deed of Trust) upon the encumbrance of the Real Property by any lien junior to or of equal priority with the lien of the Mortgage (Deed of Trust).

POWERS OF ATTORNEY. The various agencies and powers of attorney conveyed on Lender under this Mortgage are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

LEGAL DESCRIPTION INDEMNIFICATION. Grantor has read and does hereby approve the legal description of the Real Property attached hereto, and hereby indemnifies Lender, it successors and assigns, and their attorneys with respect to any liability which might arise.



**MORTGAGE**
**(Continued)**

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by, construed and enforced in accordance with federal law and the laws of the State of New York. This Mortgage has been accepted by Lender in the State of New York.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inures to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Ares Plumbing Supply, Inc. and includes all co-signers and co-makers signing the Note.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Ares Plumbing Supply, Inc..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment



**MORGAGE**
**(Continued)**

Page 8

when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Improvements. The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

Indebtedness. The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, including attorneys' fees, together with interest on such amounts as provided in this Mortgage.

Lender. The word "Lender" means New Century Mortgage Corporation, its successors and assigns.

Mortgage. The word "Mortgage" means this Mortgage between Grantor and Lender.

Note. The word "Note" means the promissory note dated November 8, 2004, in the original principal amount of $347,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Mortgage is December 1, 2034. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

Property. The word "Property" means collectively the Real Property and the Personal Property.

Real Property. The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

AREA PLUMBING SUPPLY, INC.

By: _____
Mousa Khalil, President of Area Plumbing Supply, Inc.

**MORTGAGE**
**(Continued)**

Page 9

## CORPORATE ACKNOWLEDGMENT

STATE OF _New York_

COUNTY OF _Kings_ ) SS

On the _5t_ day of _November_ in the year 20_01_ before me, the undersigned, a Notary Public in and for said State, personally appeared Moussa Khalil, President of Aras Plumbing Supply, Inc., personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name is subscribed to the within instrument and acknowledged to me that he or she executed the same in his or her capacity, and that by his or her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

By _____

_____
Notary Public

Anthoula Liger
Notary Public
My Notary Pub. Expires
Commission in Kin
State of Nev
# 01LI60
Commission Exp.

Notary Public
Commission in Kings
State of New
# 01LI60
Commission Exp. 2.

Exhibit "C"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-------------------------------------------------------------------x
WELLS FARGO BANK N.A., AS TRUSTEE FOR
THE REGISTERED HOLDERS OF CBA
COMMERCIAL ASSETS, SMALL BALANCE          :
COMMERCIAL MORTGAGE PASS-THROUGH               Index No. 30107/08
CERTIFICATES, SERIES 2005-1,              :

                    Plaintiff,            :    **ASSIGNMENT OF**
                                               **CAUSE OF ACTION**
            - against -                   :

                                          :
AREA PLUMBING SUPPLY, INC., MOUSA A.
KHALIL, ANASTASIA PAPADOPOULOS,           :
NIKOLAOS PAPADOPOULOS, CONGREGATION
KAHAL MINCHAS CHINUCH, INC.,              :
CONGREGATION IMREI YEHUDAH, NEW YORK
STATE DEPARTMENT OF TAXATION AND          :
FINANCE, NEW YORK CITY ENVIRONMENTAL
CONTROL BOARD and JOHN DOES 1-100, the latter :
names being fictitious but intending to designate tenants
and persons in possession or persons having an interest  :
in the premises described in the Complaint herein,
                                          :
                    Defendants.
                                          :
-------------------------------------------------------------------x


        Wells Fargo Bank N.A., as Trustee for the Registered Holders of CBA Commercial Assets,
Small Balance Commercial Mortgage Pass-Through Certificates, Series 2005-1 ("Assignor" or
"Plaintiff"), hereby assigns, transfers and sets over all of its right, title and interest in and to the
within action to Park Ave RE LLC, a New York limited liability company ("Assignee").

        Assignee agrees to prosecute this action in its own name and to make a motion to substitute
itself in the place and stead of the Plaintiff as soon as practicable.

This assignment is made without recourse to, or representation by, the Assignor in any case or event whatsoever.

Assignee:

Park Ave RE LLC, a New York
limited liability company

By:_____
    Name:_____
    Title:_____

Assignor:

Wells Fargo Bank N.A., as Trustee for the Registered
Holders of CBA Commercial Assets, Small Balance
Commercial Mortgage Pass-Through Certificates,
Series 2005-1

By:    Midland Loan Services, Inc., a Delaware
       Corporation, its manager, in its capacity as
       special servicer

By:_____
       _____, Servicing Officer

STATE OF NEW YORK    )
                               ss:
COUNTY OF            )

On the ____ day of _____ in the year 2010 before me, the undersigned, personally appeared
_____, personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person
upon behalf of which the individual(s) acted, executed the instrument.


_____
Notary Public


STATE OF KANSAS         )
                                )
COUNTY OF JOHNSON    )

     On the 20 day of December in the year 2010 before me, the undersigned, personally
appeared Kevin C Donahue _____, the SVP ___ of Midland Loan Services
personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s)
on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned
in the City of Overland Park, Johnson _____ County, Kansas _____.

_____
Notary Public Brandy Alexander
My Commission Expires: 3/7/11

NOTARY PUBLIC - State of Kansas
BRANDY ALEXANDER
My Appt. Exp. 3/7/11

This assignment is made without recourse to, or representation by, the Assignor in any case or event whatsoever.

Assignee:

Park Ave. R.E. LLC, a New York limited liability company

By: X _____
Name: Faigy Stern
Title: _____

Assignor:

Wells Fargo Bank N.A., as Trustee for the Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2005-1

By:    Midland Loan Services, Inc., a Delaware Corporation, its manager, in its capacity as special servicer

By: _____
_____, Servicing Officer

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF  KINGS         )

On the _31_ day of _December, 2010_ in the year 2010 before me, the undersigned, personally appeared
_____, personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person
upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

ELLEN G. STERN
Notary Public, State of New York
No. 01ST6019190
Qualified in Kings County
Commission Expires February 01, 2015

STATE OF KANSAS         )
                        )
COUNTY OF JOHNSON       )

On the _31_ day of _Dec 2010_ in the year 2010 before me, the undersigned, personally
appeared _____, the _____ of _____,
personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their capacity(ies) , that by his/her/their signature(s)
on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned
in the City of _____ County, _____

_____
Notary Public
My Commission Expires:

ELLEN G. STERN
Notary Public, State of New York
No. 01ST6019190
Qualified in Kings County
Commission Expires February 01, 20__

3

# ALLONGE TO THE NOTE

**LOAN #:**

**NOTE DATED:** October 20, 2004

**IN FAVOR OF:**

*NEW CENTURY MORTGAGE CORPORATION*

**AND EXECUTED BY:** Area Plumbing Supply

**PAY TO THE ORDER OF WITHOUT RECOURSE:**

*NEW CENTURY MORTGAGE CORPORATION*

**BY:** _Magda Villanueva_

**NAME:** Magda Villanueva

**TITLE:** A.V.P./ Shipping Manager

## Allonge

Reference is made to the $275,000 promissory note dated November 8, 2004, from Area Plumbing Supply, Inc. (the "Note") payable to the order of Wells Fargo Bank N.A., as Trustee for the Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2005-1 ("Assignor"), as successor to New Century Mortgage Corporation. It is intended that this Allonge be attached to and made a permanent part of the Note.

For Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, pay to the order of Park Ave RE LLC, a New York limited liability company ("Assignee"), without recourse, representations or warranties of any kind.

Executed this ___ day of _____, 2010.

> Wells Fargo Bank N.A., as Trustee for the Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2005-1
>
> By: Midland Loan Services, Inc., a Delaware Corporation, its manager, in its capacity as special servicer
>
> By: _____
> Name: 
> Title: Senior Vice President
> Servicing Officer

<u>Allonge</u>

Reference is made to the $261,000 promissory note dated November 8, 2004, from Area Plumbing Supply, Inc. (the "Note") payable to the order of Wells Fargo Bank N.A., as Trustee for the Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2005-1 ("Assignor"), as successor to New Century Mortgage Corporation.  It is intended that this Allonge be attached to and made a permanent part of the Note.

For Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, pay to the order of Park Ave RE LLC, a New York limited liability company ("Assignee"), without recourse, representations or warranties of any kind.

Executed this ___ day of _____, 2010.

Wells Fargo Bank N.A., as Trustee for the Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2005-1

By:  Midland Loan Services, Inc., a Delaware Corporation, its manager, in its capacity as special servicer

By: _____

Name: _____

Title: Kevin C. Donahue
Senior Vice President
Servicing Officer

<u>Allonge</u>

Reference is made to the $347,000 promissory note dated November 8, 2004, from Area Plumbing Supply, Inc. (the "Note") payable to the order of Wells Fargo Bank N.A., as Trustee for the Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2005-1 ("Assignor"), as successor to New Century Mortgage Corporation. It is intended that this Allonge be attached to and made a permanent part of the Note.

For Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, pay to the order of Park Ave RE LLC, a New York limited liability company ("Assignee"), without recourse, representations or warranties of any kind.

Executed this ___ day of _____, 2010.

> Wells Fargo Bank N.A., as Trustee for the Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2005-1
>
> By:  Midland Loan Services, Inc., a Delaware Corporation, its manager, in its capacity as special servicer
>
> By:  _____
> Name:  Kevin C. Donahue
> Title:  Senior Vice President
>        Servicing Officer

## ASSIGNMENT OF LOAN DOCUMENTS

Wells Fargo Bank N.A., as Trustee for the Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2005-1 (the "Seller"), for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and pursuant to the terms and conditions of that certain Loan Sale Agreement dated October __, 2010 between the Seller and Bonanno Realty L.L.C., a New York limited liability company (the "Buyer"), does hereby sell, assign, transfer and convey to Park Ave RE LLC, its heirs, administrators, representatives, successors and assigns, all rights, title and interests of the Seller, as of the date hereof, in, to and under the Loan(s) described in the Loan Sale Agreement including, without limitation, all Loan Documents described in the Loan Sale Agreement.

THIS ASSIGNMENT OF LOAN DOCUMENTS IS EXECUTED WITHOUT RECOURSE AND WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, EXPRESSED, IMPLIED OR IMPOSED BY LAW, EXCEPT AS PROVIDED IN THE ASSET SALE AGREEMENT.

EXECUTED this ___ day of _____, 2010.

SELLER:

Wells Fargo Bank N.A., as Trustee for the Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2005-1

By:     Midland Loan Services, Inc., a Delaware Corporation, its manager, in its capacity as special servicer

By:     _____
        Name:
        Title:    Kevin C. Licudine
                  Senior Vice President
                  Servicing Officer

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

*This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.*

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

Document ID: 2005121202081001    Document Date: 11-11-2005    Preparation Date: 12-12-2005
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 2

| PRESENTER: | RETURN TO: |
|---|---|
| KC WILSON & ASSOCIATES | KC WILSON & ASSOCIATES |
| 23232 PERALTA DRIVE #218 | 23232 PERALTA DRIVE #218 |
| 800001421 CBAC 2005-1 | 800001421 CBAC 2005-1 |
| LAGUNA HILLS, CA 92653 | LAGUNA HILLS, CA 92653 |
| 949-470-3960 | 949-470-3960 |
| thecrew@kcwilsonandassoc.com | thecrew@kcwilsonandassoc.com |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9427 | 7 | Entire Lot | 109-22 101 AVENUE |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

### CROSS REFERENCE DATA

CRFN: 2005000108071

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| NEW CENTURY MORTGAGE CORPORATION | WELLS FARGO BANK, N.A., AS TRUSTEE |
| 18400 VON KARMAN, SUITE 1000 | 751 KASOTA AVENUE, SUITE MDC, ATTN: CBA |
| IRVINE, CA 92612 | 2005-1 |
|  | MINNEAPOLIS, MN 55414 |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 47.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed      12-22-2005 13:07
City Register File No.(CRFN):
2005000703814

*Annette M. Hill*

*City Register Official Signature*

PREPARED BY: KC WILSON
AFTER RECORDATION RETURN TO:
KC WILSON & ASSOCIATES
23232 Peralta Drive #218
Laguna Hills, CA 92653

### ASSIGNMENT OF MORTGAGE

LOAN #

KNOWN BY ALL MEN BY THESE PRESENTS, THAT
ASSIGNOR:                              NEW CENTURY MORTGAGE CORPORATION

ASSIGNOR ADDRESS:                      18400 VON KARMAN, SUITE 1000
                                       IRVINE, CA 92612

FOR AND IN CONSIDERATION OF THE SUM OF ONE DOLLAR AND OTHER VALUABLE CONSIDERATION
LAWFUL MONEY OF THE UNITED STATES OF AMERICA, AND OTHER GOOD AND VALUABLE
CONSIDERATION, TO IT IN HAND PAID BY:

ASSIGNEE:                              WELLS FARGO BANK N.A., AS TRUSTEE FOR THE REGISTERED
                                       HOLDERS OF CBA COMMERCIAL ASSETS, SMALL BALANCE
                                       COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES,
                                       SERIES 2005-1

ASSIGNEE ADDRESS:                      751 KASOTA AVENUE, SUITE MDC
                                       MINNEAPOLIS, MN 55414
                                       ATTN: CBA 2005-1

AT OR BEFORE THE ENSEALING AND DELIVERY OF THESE PRESENTS, THE RECEIPT OF WHEREOF IS
HEREBY ACKNOWLEDGED, HAS GRANTED, BARGAINED, SOLD, ASSIGNED, TRANSFERRED AND SET
OVER, AND BY THESE PRESENTS DOES GRANT, BARGAIN, SELL, ASSIGN, TRANSFER AND SET OVER
UNTO THE SAID ASSIGNEE AND ITS SUCCESSORS AND ASSIGNS ALL THAT CERTAIN MORTGAGE
BEARING THE:

DATED:                                 11/08/2004
MORTGAGE AMOUNT:                       $287,000.00
MORTGAGOR/BORROWER:                    AREA PLUMBING SUPPLY, INC.
MORTGAGEE/BENEFICIARY:            -    NEW CENTURY MORTGAGE CORPORATION

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF QUEENS COUNTY, NEW YORK
RECORDED: 02/22/2005 IN BOOK/VOLUME/LIBER: _____ PAGE: _____ DOCUMENT: 2005000108071

PROPERTY SUBJECT TO LIEN:              109-22 101ST AVENUE
                                       OZONE PARK, NY 11419

SECTION-              BL: 9427          LOT: 7



# CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

STATE OF CALIFORNIA
COUNTY OF ORANGE

On **November 11, 2005** before me the undersigned **Erika Reyes, A** Notary Public in and for Orange County and the State of California, personally appeared **Diana Noriega, A.V.P./ Trailing Docs Manager,** who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the within instrument and acknowledged to me that their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

Witness my hand and official seal

*Signature of Notary Public*

**Erika Reyes**
*COMMISSION # 1455401*
**COMMISSION EXPIRES:**
**December 9,2007**

ERIKA REYES
Comm. #1455401
NOTARY PUBLIC-CALIFORNIA
County of Orange
My Comm. Expires Dec. 9, 2007

Recorded By:

_____
_____
_____
_____

And When Recorded Mail To:

_____
_____
_____
_____

*(Space above this line for Recorder's use)*

## ASSIGNMENT OF MORTGAGE

Wells Fargo Bank N.A., as Trustee for the Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2005-1 ("Assignor"), having an address of 10851 Mastin Boulevard, Suite 700, Overland Park, KS 66210, the holder of the Mortgage, dated November 8, 2004, and recorded in the Office of the Register of the City of New York for Queens County, on February 22, 2005 as document number CRFN 2005000108071 (together with any amendments, renewals, extensions, or modifications thereto, the "Mortgage"), for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby assigns the Mortgage, and the notes and claims secured thereby, to Park Ave RE LLC, a New York limited liability company ("Assignee") with an address of 1430 Broadway, New York, NY 10018.

This assignment is made without recourse, representations or warranties of any kind.

This assignment is not subject to the requirements of section 275 of the Real Property Law since it is an assignment in the secondary mortgage market.

[THE REMAINDER OF THIS PAGE WAS LEFT BLANK INTENTIONALLY]

**IN WITNESS WHEREOF**, Assignor has duly executed this Assignment as of
_____ ___, 2010.

> Wells Fargo Bank N.A., as Trustee for the Registered
> Holders of CBA Commercial Assets, Small Balance
> Commercial Mortgage Pass-Through Certificates,
> Series 2005-1

By:   Midland Loan Services, Inc., a Delaware
      Corporation, its manager, in its capacity as
      special servicer

By:   _____

     Name:
     Title:   Kevin C. Donahue
         Senior Vice President,
         Servicing Officer

STATE OF KANSAS    )
                      )
COUNTY OF JOHNSON  )

    On the 20 day of December in the year 2010 before me, the undersigned,
personally appeared Kevin C Donahue _____, the SVP _____ of
Midland Loan Services personally known to me or proved to me on the basis of satisfactory
evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their capacity(ies) , that by
his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument, and that such individual made such appearance
before the undersigned in the City of Overland Park , Johnson County,
Kansas _____.

NOTARY PUBLIC - State of Kansas
BRANDY ALEXANDER
My Appt. Exp. 3/7/11

Notary Public  Brandy Alexander
My Commission Expires: 3/7/11

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | | GE 1 OF 3 |
|---|---|---|

| Document ID: 2005121202062001 | Document Date: 11-11-2005 | Preparation Date: 12-12-2005 |
|---|---|---|
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 2 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| KC WILSON & ASSOCIATES | KC WILSON & ASSOCIATES |
| 23232 PERALTA DRIVE #218 | 23232 PERALTA DRIVE #218 |
| 800001408 CBAC 2005-1 | 800001408 CBAC 2005-1 |
| LAGUNA HILLS, CA  92653 | LAGUNA HILLS, CA  92653 |
| 949-470-3960 | 949-470-3960 |
| thecrew@kcwilsonandassoc.com | thecrew@kcwilsonandassoc.com |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9427 | 8 | Entire Lot | 109-24 101 AVENUE |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

### CROSS REFERENCE DATA

CRFN: 2005000030806

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| NEW CENTURY MORTGAGE CORPORATION | WELLS FARGO BANK, N.A., AS TRUSTEE |
| 18400 VON KARMAN, SUITE 1000 | 751 KASOTA AVENUE, SUITE MDC, ATTN: CBA |
| IRVINE, CA  92612 | 2005-1 |
| | MINNEAPOLIS, MN  55414 |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 47.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Affidavit Fee:  $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing  Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| NYCTA: | $ | 0.00 | Recorded/Filed        12-22-2005 12:37 | |
| Additional  MRT: | $ | 0.00 | City Register File No.(CRFN): | |
| TOTAL: | $ | 0.00 | 2005000703589 | |

*Jeanette M Hill*

*City Register Official Signature*

PREPARED BY: KC WILSON
AFTER RECORDATION RETURN TO:
KC WILSON & ASSOCIATES
23232 Peralta Drive #218
Laguna Hills, CA 92653

## ASSIGNMENT OF MORTGAGE

LOAN #: i

KNOWN BY ALL MEN BY THESE PRESENTS, THAT
ASSIGNOR:                          NEW CENTURY MORTGAGE CORPORATION

ASSIGNOR ADDRESS:                  18400 VON KARMAN, SUITE 1000
                                   IRVINE, CA 92612

FOR AND IN CONSIDERATION OF THE SUM OF ONE DOLLAR AND OTHER VALUABLE CONSIDERATION
LAWFUL MONEY OF THE UNITED STATES OF AMERICA, AND OTHER GOOD AND VALUABLE
CONSIDERATION, TO IT IN HAND PAID BY:

ASSIGNEE:                          WELLS FARGO BANK N.A., AS TRUSTEE FOR THE REGISTERED
                                   HOLDERS OF CBA COMMERCIAL ASSETS, SMALL BALANCE
                                   COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES,
                                   SERIES 2005-1

ASSIGNEE ADDRESS:                  751 KASOTA AVENUE, SUITE MDC
                                   MINNEAPOLIS, MN 55414
                                   ATTN: CBA 2005-1

AT OR BEFORE THE ENSEALING AND DELIVERY OF THESE PRESENTS, THE RECEIPT OF WHEREOF IS
HEREBY ACKNOWLEDGED, HAS GRANTED, BARGAINED, SOLD, ASSIGNED, TRANSFERRED AND SET
OVER, AND BY THESE PRESENTS DOES GRANT, BARGAIN, SELL, ASSIGN, TRANSFER AND SET OVER
UNTO THE SAID ASSIGNEE AND ITS SUCCESSORS AND ASSIGNS ALL THAT CERTAIN MORTGAGE
BEARING THE:

DATED:                             11/08/2004
MORTGAGE AMOUNT:                   $275,000.00
MORTGAGOR/BORROWER:                AREA PLUMBING SUPPLY, INC.
MORTGAGEE/BENEFICIARY:             NEW CENTURY MORTGAGE CORPORATION

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF QUEENS COUNTY, NEW YORK
RECORDED: 01/18/2005 IN BOOK/VOLUME/LIBER: _____ PAGE: _____ DOCUMENT: 2005000030806

PROPERTY SUBJECT TO LIEN:          109-24 101 AVENUE
                                   OZONE PARK, NY 11419

SECTION:          BL: 9427                   LOT: 8

THIS ASSIGNMENT IS NOT SUBJECT TO THE REQUIREMENTS OF SECTIONS 275 OF THE REAL PROPERTY
LAW BECAUSE IT IS AN ASSIGNMENT WITHIN THE SECONDARY MORTGAGE MARKET.

TOGETHER WITH THE HEREDITAMENTS, AND PREMISES IN AND BY SAID MORTGAGE PARTICULARLY
DESCRIBED AND GRANTED, OR MENTIONED AND THEREBY INTENDED TO BE SECURED AND ALL
INCIDENTAL OR SUPPLEMENTAL DOCUMENTS, OR INSTRUMENTS, IF ANY, SECURED OR INTENDED TO BE
SECURED THEREBY, AND ALL MONIES DUE AND TO GROW DUE THEREON, AND ALL ITS ESTATE, RIGHT,
TITLE, INTEREST, PROPERTY, CLAIM AND DEMAND IN AND TO THE SAME.

TO HAVE AND TO HOLD THE SAME UNTO THE SAID ASSIGNEE AND ITS SUCCESSORS AND ASSIGNS, TO
ITS PROPER USE, BENEFIT AND BEHOOVE FOREVER, SUBJECT, NEVERTHELESS, TO THE EQUITY OF
REDEMPTION OF SAID MORTGAGOR IN SAID MORTGAGE NAMED, AND THE HEIRS, EXECUTORS,
ADMINISTRATORS, SUCCESSORS AND ASSIGNS OF SAID MORTGAGOR THEREIN.

IN WITNESS WHEREOF, THE SAID ASSIGNOR HAS EXECUTED BY ITS PROPER OFFICE THIS

DATE: _____ NOV 1 1 2005 _____



NEW CENTURY MORTGAGE CORPORATION

BY: _____

NAME: DIANA NORIEGA
TITLE: ASSISTANT VICE PRESIDENT

NOTARY SEE SECOND PAGE TO BE COMPLETED

NEW YORK 11/99

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

STATE OF CALIFORNIA
COUNTY OF ORANGE

On November 11, 2005 before me the undersigned **Erika Reyes**, A Notary Public in and for Orange County and the State of California, personally appeared **Diana Noriega, A.V.P./ Trailing Docs Manager,** who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the within instrument and acknowledged to me that their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

Witness my hand and official seal

_Signature_

Signature of Notary Public

Erika Reyes
COMMISSION # 1455401
COMMISSION EXPIRES:
December 9,2007

ERIKA REYES
Comm. # 1455401
NOTARY PUBLIC-CALIFORNIA
County of Orange
My Comm. Expires Dec. 9, 2007

Recorded By:

_____
_____
_____
_____

And When Recorded Mail To:

_____
_____
_____
_____

*(Space above this line for Recorder's use)*

## ASSIGNMENT OF MORTGAGE

Wells Fargo Bank N.A., as Trustee for the Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2005-1 ("Assignor"), having an address of 10851 Mastin Boulevard, Suite 700, Overland Park, KS 66210, the holder of the Mortgage, dated November 8, 2004, and recorded in the Office of the Register of the City of New York for Queens County, on January 18, 2005 as document number CRFN 200500030806 (together with any amendments, renewals, extensions, or modifications thereto, the "Mortgage"), for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby assigns the Mortgage, and the notes and claims secured thereby, to Park Ave RE LLC, a New York limited liability company ("Assignee") with an address of 1430 Broadway, New York, NY 10018.

This assignment is made without recourse, representations or warranties of any kind.

This assignment is not subject to the requirements of section 275 of the Real Property Law since it is an assignment in the secondary mortgage market.

[THE REMAINDER OF THIS PAGE WAS LEFT BLANK INTENTIONALLY]

**IN WITNESS WHEREOF**, Assignor has duly executed this Assignment as of
_____ ___, 2010.

> Wells Fargo Bank N.A., as Trustee for the Registered
> Holders of CBA Commercial Assets, Small Balance
> Commercial Mortgage Pass-Through Certificates,
> Series 2005-1

> By: Midland Loan Services, Inc., a Delaware
> Corporation, its manager, in its capacity as
> special servicer

> By: _____
> Name: Kevin C. Donahue
> Title: Senior Vice President
>        Servicing Officer

STATE OF KANSAS        )
                       )
COUNTY OF JOHNSON      )

On the 20 day of December in the year 2010 before me, the undersigned, personally
appeared Kevin C Donahue , the SVP of 3 Midland Loan Services
personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their capacity(ies) , that by his/her/their signature(s)
on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned
in the City of Overland Park , Johnson County, Kansas .

_____
Notary Public Brandy Alexander
My Commission Expires: 3|17|11

NOTARY PUBLIC - State of Kansas
BRANDY ALEXANDER
My Appt. Exp. 3|17|11

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

Document ID: 2005121202027001    Document Date: 11-11-2005    Preparation Date: 12-12-2005
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 2

**PRESENTER:**
KC WILSON & ASSOCIATES
23232 PERALTA DRIVE #218
800001403 CBAC 2005-1
LAGUNA HILLS, CA 92653
949-470-3960
thecrew@kcwilsonandassoc.com

**RETURN TO:**
KC WILSON & ASSOCIATES
23232 PERALTA DRIVE #218
800001403 CBAC 2005-1
LAGUNA HILLS, CA 92653
949-470-3960
thecrew@kcwilsonandassoc.com

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9427 | 9 | Entire Lot | 109-26 101 AVENUE |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

### CROSS REFERENCE DATA
CRFN: 2005000032344

### PARTIES
**ASSIGNOR/OLD LENDER:**
NEW CENTURY MORTGAGE CORPORATION
18400 VON KARMAN, SUITE 1000
IRVINE, CA 92612

**ASSIGNEE/NEW LENDER:**
WELLS FARGO BANK, N.A., AS TRUSTEE
751 KASOTA AVENUE, SUITE MDC, ATTN: CBA 2005-1
MINNEAPOLIS, MN 55414

### FEES AND TAXES

| Mortgage | | Recording Fee: $ | 47.00 |
|---|---|---|---|
| Mortgage Amount: | $ 0.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ 0.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | $ | 0.00 |
| TAXES: County (Basic): | $ 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ 0.00 | $ | 0.00 |
| Spec (Additional): | $ 0.00 | | |
| TASF: | $ 0.00 | | |
| MTA: | $ 0.00 | | |
| NYCTA: | $ 0.00 | | |
| Additional MRT: | $ 0.00 | | |
| TOTAL: | $ 0.00 | | |

RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK
Recorded/Filed 12-22-2005 13:08
City Register File No.(CRFN): 2005000703819

*Annette M. Hill*
City Register Official Signature

PREPARED BY: KC WILSON
AFTER RECORDATION RETURN TO:
KC WILSON & ASSOCIATES
23232 Peralta Drive #218
Laguna Hills, CA 92653

### ASSIGNMENT OF MORTGAGE

LOAN #:

KNOWN BY ALL MEN BY THESE PRESENTS, THAT

ASSIGNOR:                    NEW CENTURY MORTGAGE CORPORATION

ASSIGNOR ADDRESS:            18400 VON KARMAN, SUITE 1000
                             IRVINE, CA 92612

FOR AND IN CONSIDERATION OF THE SUM OF ONE DOLLAR AND OTHER VALUABLE CONSIDERATION
LAWFUL MONEY OF THE UNITED STATES OF AMERICA, AND OTHER GOOD AND VALUABLE
CONSIDERATION, TO IT IN HAND PAID BY:

ASSIGNEE:                    WELLS FARGO BANK N.A., AS TRUSTEE FOR THE REGISTERED
                             HOLDERS OF CBA COMMERCIAL ASSETS, SMALL BALANCE
                             COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES,
                             SERIES 2005-1

ASSIGNEE ADDRESS:            751 KASOTA AVENUE, SUITE MDC
                             MINNEAPOLIS, MN 55414
                             ATTN: CBA 2005-1

AT OR BEFORE THE ENSEALING AND DELIVERY OF THESE PRESENTS, THE RECEIPT OF WHEREOF IS
HEREBY ACKNOWLEDGED, HAS GRANTED, BARGAINED, SOLD, ASSIGNED, TRANSFERRED AND SET
OVER, AND BY THESE PRESENTS DOES GRANT, BARGAIN, SELL, ASSIGN, TRANSFER AND SET OVER
UNTO THE SAID ASSIGNEE AND ITS SUCCESSORS AND ASSIGNS ALL THAT CERTAIN MORTGAGE
BEARING THE:

DATED:                       11/08/2004
MORTGAGE AMOUNT:             $261,000.00
MORTGAGOR/BORROWER:          MOUSA KHALIL
MORTGAGEE/BENEFICIARY:       NEW CENTURY MORTGAGE CORPORATION

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF QUEENS COUNTY, NEW YORK
RECORDED: 01/18/2005 IN BOOK/VOLUME/LIBER: _____ PAGE: _____ DOCUMENT: 2005000032344

PROPERTY SUBJECT TO LIEN:    109-26 101 AVENUE
                             OZONE PARK, NY 11419

SECTION:          BL: 9427          LOT: 9

THIS ASSIGNMENT IS NOT SUBJECT TO THE REQUIREMENTS OF SECTIONS 275 OF THE REAL PROPERTY
LAW BECAUSE IT IS AN ASSIGNMENT WITHIN THE SECONDARY MORTGAGE MARKET.

TOGETHER WITH THE HEREDITAMENTS, AND PREMISES IN AND BY SAID MORTGAGE PARTICULARLY
DESCRIBED AND GRANTED, OR MENTIONED AND THEREBY INTENDED TO BE SECURED AND ALL
INCIDENTAL OR SUPPLEMENTAL DOCUMENTS, OR INSTRUMENTS, IF ANY, SECURED OR INTENDED TO BE
SECURED THEREBY, AND ALL MONIES DUE AND TO GROW DUE THEREON, AND ALL ITS ESTATE, RIGHT,
TITLE, INTEREST, PROPERTY, CLAIM AND DEMAND IN AND TO THE SAME.

TO HAVE AND TO HOLD THE SAME UNTO THE SAID ASSIGNEE AND ITS SUCCESSORS AND ASSIGNS, TO
ITS PROPER USE, BENEFIT AND BEHOOVE FOREVER, SUBJECT, NEVERTHELESS, TO THE EQUITY OF
REDEMPTION OF SAID MORTGAGOR IN SAID MORTGAGE NAMED, AND THE HEIRS, EXECUTORS,
ADMINISTRATORS, SUCCESSORS AND ASSIGNS OF SAID MORTGAGOR THEREIN.

IN WITNESS WHEREOF, THE SAID ASSIGNOR HAS EXECUTED BY ITS PROPER OFFICE THIS

DATE:     NOV 11 2005



                             NEW CENTURY MORTGAGE CORPORATION

                             BY: _____
                             NAME: DIANA NORIEGA
                             TITLE: ASSISTANT VICE PRESIDENT

                    NOTARY SEE SECOND PAGE TO BE COMPLETED

NEW YORK 11/99

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

STATE OF CALIFORNIA
COUNTY OF ORANGE

On **November 11, 2005** before me the undersigned **Erika Reyes**, A Notary Public in and for Orange County and the State of California, personally appeared **Diana Noriega, A.V.P./ Trailing Docs Manager**, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the within instrument and acknowledged to me that their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

Witness my hand and official seal

Signature of Notary Public

Erika Reyes
COMMISSION # 1455401
COMMISSION EXPIRES:
December 9,2007

ERIKA REYES
Comm. # 1455401
NOTARY PUBLIC-CALIFORNIA
County of Orange
My Comm. Expires Dec. 9, 2007

Recorded By:

_____
_____
_____
_____

And When Recorded Mail To:

_____
_____
_____
_____

*(Space above this line for Recorder's use)*

## ASSIGNMENT OF MORTGAGE

Wells Fargo Bank N.A., as Trustee for the Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2005-1 ("Assignor"), having an address of 10851 Mastin Boulevard, Suite 700, Overland Park, KS 66210, the holder of the Mortgage, dated November 8, 2004, and recorded in the Office of the Register of the City of New York for Queens County, on on January 18, 2005 as document number CRFN 200500032344 (together with any amendments, renewals, extensions, or modifications thereto, the "Mortgage"), for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby assigns the Mortgage, and the notes and claims secured thereby, to Park Ave RE LLC, a New York limited liability company ("Assignee") with an address of 1430 Broadway, New York, NY 10018.

This assignment is made without recourse, representations or warranties of any kind.

This assignment is not subject to the requirements of section 275 of the Real Property Law since it is an assignment in the secondary mortgage market.

[THE REMAINDER OF THIS PAGE WAS LEFT BLANK INTENTIONALLY]

**IN WITNESS WHEREOF**, Assignor has duly executed this Assignment as of
_____ ___, 2010.

Wells Fargo Bank N.A., as Trustee for the Registered
Holders of CBA Commercial Assets, Small Balance
Commercial Mortgage Pass-Through Certificates,
Series 2005-1

By:    Midland Loan Services, Inc., a Delaware
       Corporation, its manager, in its capacity as
       special servicer

By:    _____

Name:

Title: ~~Colleen Davis President~~
       ~~Servicing Officer~~

STATE OF KANSAS        )
                       )
COUNTY OF JOHNSON      )

On the 20 day of December in the year 2010 before me, the undersigned, personally
appeared Kevin C Donahue , the SVP of Midland Loan Services
personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their capacity(ies) , that by his/her/their signature(s)
on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned
in the City of Overland Park , Johnson County, Kansas .

Notary Public Brandy Alexander
My Commission Expires: 3/7/11

NOTARY PUBLIC - State of Kansas
BRANDY ALEXANDER
My Appt. Exp. 3/7/11

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

| Document ID: 2005121202044001 | Document Date: 11-11-2005 | Preparation Date: 12-12-2005 |
|---|---|---|
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 2 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| KC WILSON & ASSOCIATES | KC WILSON & ASSOCIATES |
| 23232 PERALTA DRIVE #218 | 23232 PERALTA DRIVE #218 |
| 800001405 CBAC 2005-1 | 800001405 CBAC 2005-1 |
| LAGUNA HILLS, CA 92653 | LAGUNA HILLS, CA 92653 |
| 949-470-3960 | 949-470-3960 |
| thecrew@kcwilsonandassoc.com | thecrew@kcwilsonandassoc.com |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9427 | 10 | Entire Lot | 109-28 101 AVENUE |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

### CROSS REFERENCE DATA

CRFN: 2005000087807

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| NEW CENTURY MORTGAGE COROPRATION | WELLS FARGO BANK, N.A., AS TRUSTEE |
| 18400 VON KARMAN, SUITE 1000 | 751 KASOTA AVENUE, SUITE MDC, ATTN: CBA |
| IRVINE, CA 92612 | 2005-1 |
| | MINNEAPOLIS, MN 55414 |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 47.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | |
| TASF: | $ | 0.00 | OF THE CITY REGISTER OF THE | |
| MTA: | $ | 0.00 | CITY OF NEW YORK | |
| NYCTA: | $ | 0.00 | Recorded/Filed      12-22-2005 12:40 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | |
| TOTAL: | $ | 0.00 | 2005000703633 | |

*Annette M. Hill*

*City Register Official Signature*

PREPARED BY: KC WILSON
AFTER RECORDATION RETURN TO:
KC WILSON & ASSOCIATES
23232 Peralta Drive #218
Laguna Hills, CA 92653

ASSIGNMENT OF MORTGAGE

LOAN #: 800001405

KNOWN BY ALL MEN BY THESE PRESENTS, THAT
ASSIGNOR:                          NEW CENTURY MORTGAGE CORPORATION

ASSIGNOR ADDRESS:                  18400 VON KARMAN, SUITE 1000
                                   IRVINE, CA 92612

FOR AND IN CONSIDERATION OF THE SUM OF ONE DOLLAR AND OTHER VALUABLE CONSIDERATION
LAWFUL MONEY OF THE UNITED STATES OF AMERICA, AND OTHER GOOD AND VALUABLE
CONSIDERATION, TO IT IN HAND PAID BY:

ASSIGNEE:                          WELLS FARGO BANK N.A., AS TRUSTEE FOR THE REGISTERED
                                   HOLDERS OF CBA COMMERCIAL ASSETS, SMALL BALANCE
                                   COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES,
                                   SERIES 2005-1

ASSIGNEE ADDRESS:                  751 KASOTA AVENUE, SUITE MOC
                                   MINNEAPOLIS, MN 55414
                                   ATTN: CBA 2005-1

AT OR BEFORE THE ENSEALING AND DELIVERY OF THESE PRESENTS, THE RECEIPT OF WHEREOF IS
HEREBY ACKNOWLEDGED, HAS GRANTED, BARGAINED, SOLD, ASSIGNED, TRANSFERRED AND SET
OVER, AND BY THESE PRESENTS DOES GRANT, BARGAIN, SELL, ASSIGN, TRANSFER AND SET OVER
UNTO THE SAID ASSIGNEE AND ITS SUCCESSORS AND ASSIGNS ALL THAT CERTAIN MORTGAGE
BEARING THE:

DATED:                             11/08/2004
MORTGAGE AMOUNT:                   $347,000.00
MORTGAGOR/BORROWER:                AREA PLUMBING SUPPLY, INC.
MORTGAGEE/BENEFICIARY:             NEW CENTURY MORTGAGE CORPORATION

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF QUEENS COUNTY, NEW YORK
RECORDED: 02/11/2005 IN BOOK/VOLUME/LIBER: _____ PAGE: _____ DOCUMENT: 2005000087807

PROPERTY SUBJECT TO LIEN:          109-28 101ST AVENUE
                                   OZONE PARK, NY 11419

SECTION:         BL: 9427          LOT: 10

THIS ASSIGNMENT IS NOT SUBJECT TO THE REQUIREMENTS OF SECTIONS 275 OF THE REAL PROPERTY
LAW BECAUSE IT IS AN ASSIGNMENT WITHIN THE SECONDARY MORTGAGE MARKET.

TOGETHER WITH THE HEREDITAMENTS, AND PREMISES IN AND BY SAID MORTGAGE PARTICULARLY
DESCRIBED AND GRANTED, OR MENTIONED AND THEREBY INTENDED TO BE SECURED AND ALL
INCIDENTAL OR SUPPLEMENTAL DOCUMENTS, OR INSTRUMENTS, IF ANY, SECURED OR INTENDED TO BE
SECURED THEREBY, AND ALL MONIES DUE AND TO GROW DUE THEREON, AND ALL ITS ESTATE, RIGHT,
TITLE, INTEREST, PROPERTY, CLAIM AND DEMAND IN AND TO THE SAME.

TO HAVE AND TO HOLD THE SAME UNTO THE SAID ASSIGNEE AND ITS SUCCESSORS AND ASSIGNS, TO
ITS PROPER USE, BENEFIT AND BEHOOVE FOREVER, SUBJECT, NEVERTHELESS, TO THE EQUITY OF
REDEMPTION OF SAID MORTGAGOR IN SAID MORTGAGE NAMED, AND THE HEIRS, EXECUTORS,
ADMINISTRATORS, SUCCESSORS AND ASSIGNS OF SAID MORTGAGOR THEREIN.

IN WITNESS WHEREOF, THE SAID ASSIGNOR HAS EXECUTED BY ITS PROPER OFFICE THIS

DATE: ___NOV 11 2005___

NEW CENTURY MORTGAGE CORPORATION

BY:
NAME: DIANA NORIEGA
TITLE: ASSISTANT VICE PRESIDENT

NOTARY SEE SECOND PAGE TO BE COMPLETED

NEW YORK 11/9

# CALIFORNIA ALL-PURPOSE
# ACKNOWLEDGEMENT

STATE OF CALIFORNIA
COUNTY OF ORANGE

On **November 11, 2005** before me the undersigned **Erika Reyes**, A Notary Public in and for Orange County and the State of California, personally appeared **Diana Noriega, A.V.P./ Trailing Docs Manager**, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the within instrument and acknowledged to me that their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

Witness my hand and official seal

Signature of Notary Public

**Erika Reyes**
**COMMISSION # 1455401**
**COMMISSION EXPIRES:**
**December 9, 2007**

Recorded By:

_____

_____

_____

_____

And When Recorded Mail To:

_____

_____

_____

_____

*(Space above this line for Recorder's use)*

## ASSIGNMENT OF MORTGAGE

Wells Fargo Bank N.A., as Trustee for the Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2005-1 ("Assignor"), having an address of 10851 Mastin Boulevard, Suite 700, Overland Park, KS 66210, the holder of the Mortgage, dated November 8, 2004, and recorded in the Office of the Register of the City of New York for Queens County, February 11, 2005 as document number CRFN 200500087807 (together with any amendments, renewals, extensions, or modifications thereto, the "Mortgage"), for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby assigns the Mortgage, and the notes and claims secured thereby, to Park Ave RE LLC, a New York limited liability company ("Assignee") with an address of 1430 Broadway, New York, NY 10018.

This assignment is made without recourse, representations or warranties of any kind.

This assignment is not subject to the requirements of section 275 of the Real Property Law since it is an assignment in the secondary mortgage market.

[THE REMAINDER OF THIS PAGE WAS LEFT BLANK INTENTIONALLY]

**IN WITNESS WHEREOF**, Assignor has duly executed this Assignment as of
_____ \_\_\_, 2010.

Wells Fargo Bank N.A., as Trustee for the Registered
Holders of CBA Commercial Assets, Small Balance
Commercial Mortgage Pass-Through Certificates,
Series 2005-1

By:    Midland Loan Services, Inc., a Delaware
Corporation, its manager, in its capacity as
special servicer

By:    _____

Name:

Title:    Kevin C. Donahue
Senior Vice President
Servicing Officer

STATE OF KANSAS           )
                          )
COUNTY OF JOHNSON         )

On the 20 day of December in the year 2010 before me, the undersigned, personally
appeared Kevin C. Donahue_____, the ___SVP___ of Midland Loan Services
personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s)
on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned
in the City of Overland Park, Johnson_____ County, Kansas_____.

Notary Public Brandy Alexander
My Commission Expires: 3/7/11

NOTARY PUBLIC - State of Kansas
BRANDY ALEXANDER
My Appt. Exp. 3/7/11

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------X

IN RE:                                          CASE NO.: 1-14-44283-cec

Area Plumbing Supply Inc.,                      Chapter: 11

                                    DEBTOR.     **AFFIDAVIT OF SERVICE**

----------------------------------------------------X

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF NASSAU         )

      Karina Waage, being duly sworn, deposes and says:
      I am not a party to this action, am over 18 years of age and reside in Suffolk County, New
York.
      On November 26, 2014, I served the within Supplemental Affirmation in further support
of an Order Modifying and Terminating the Automatic Stay on the following parties by
depositing a true copy thereof in a post-paid wrapper, in an official depository under the
exclusive care and custody of the U.S. Postal Service within New York State, addressed to each
of the following persons at the last known address set forth after each name:

Area Plumbing Supply Inc.
6001 4th Avenue, Brooklyn, NY 11220

Karamvir Dahiya, Esq.
Dahiya Law Offices, LLC
75 Maiden Lane, Suite 506, New York, NY 10038

Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006, New York, NY 10014

Enid Nagler Stuart, Esq.
120 Broadway, 24th Floor, New York, NY 10271

                                     Karina Waage

Sworn to before me on this
26 day of November, 2014

NOTARY PUBLIC

CATHERINE JONES
Notary Public - State of New York
No. 01JO6143668
Qualified in Nassau County
My Commission Expires April 17, 2018